**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

RAYMUREZ CHRISTOPHER BROWN,

        Plaintiff,

v.                                             Case No. 20-10192

JOSHUA SCAGLIONE, et al.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO QUASH SUBPOENA, GRANTING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER, AND DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

      Before the court are three discovery motions. Defendant Westland Police Officers have filed a joint "Motion to Quash Subpoena" (ECF No. 34) that seeks to bar the City of Westland from turning over employment records and incident reports regarding the Defendants. Four of the Defendants have also filed a "Motion for Protective Order" which seeks to prohibit further discovery regarding taser training; prior taser deployments and taser usage; and the investigation of the incident at issue." (ECF No. 51.) Plaintiff has now also filed his own "Motion for Protective Order" seeking to ensure that Defendant Officers answer deposition questions regarding the same issues and do not assert improper claims of privilege. (ECF No. 48.) Having read the motions and response briefs, the court finds a hearing to be unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons explained below, the court concludes that only some of the records sought by Plaintiff are subject to discovery. Therefore, the court will grant Defendants' motion to quash, in part, and deny it, in part. The court will also grant

Defendants' motion for protective order in part. Because the court anticipates that its ruling has largely resolved the outstanding discovery disputes, the court will deny without prejudice Plaintiff's motion for protective order.

## I. BACKGROUND

The court draws the following factual allegations from the complaint. Plaintiff alleges that on August 17, 2018, Defendant Westland Police officers Cale Furney and Andrew Teschendorf arrived at his home and began questioning him and his girlfriend. Plaintiff asked Defendants why they were on his property, but Defendants refused to answer. Three additional Westland officers, Defendants Robert Schurig, Joshua Scaglione, and Anthony Jovanovich then arrived at Plaintiff's residence and continued to question him, although they refused to tell Plaintiff why they were questioning him and instead called him derogatory names. During this exchange, Plaintiff's two-month-old child began to cry. Plaintiff alleges that Defendant Scaglione ordered the child to be removed from the area. Plaintiff then took the child into his arms and asserts that Defendant Scaglione approached him and pointed a taser at Plaintiff and his child. As Defendant Scaglione approached Plaintiff, the remaining Defendants attempted to remove the child from Plaintiff's arms. When Plaintiff refused to relinquish the child, Defendant Scaglione used his taser on Plaintiff while he held his child and continued to tase him after he dropped to the ground. Plaintiff says that Defendant Schurig then punched and kicked him while he remained on the ground.

As a result of the encounter, Plaintiff allegedly suffered a number of injuries. (ECF No. 21, PageID.115; ECF No. 35, PageID.336.) The following claims against Defendant officers are currently at issue in the case:

      Count I: 42 U.S.C. § 1983 claim against Defendant Scaglione for excessive force;

      Count II: 42 U.S.C. § 1983 claim against Defendant Schurig for excessive force;

      Count III: 42 U.S.C. § 1983 claim against Defendants Teschendorf, Furney, and Javonavich for failure to intervene;

      Count IV: Ethnic intimidation claim against all Defendants.

The court previously declined to exercise supplemental jurisdiction over two additional state law claims. (*See* ECF No. 13.)

The parties have been engaged in discovery regarding the remaining claims, and Plaintiff has filed a third-party subpoena on the City of Westland, which is not a defendant in the present litigation. (*See* ECF No. 36-2.) The information sought is defined in quite broad terms and includes a total of thirty-one requests for information that fall into four main categories:

1. Employee, Personal, and Internal Affairs files for each of the five Defendants
2. Any and all information regarding violations, citations, warnings, or otherwise any disciplinary history for each officer;
3. Statements made by each officer pertaining to the August 17, 2018 incident whether written or recorded;
4. Garrity statement; whether written or record from each officer.

(ECF No. 36-2, PageID.385-86.) Defendants now contest each of these requests in their motion to quash. (*See* ECF No. 34.) While Defendants' motion for protective order seeks to prevent deposition questioning regarding the same issues, it also requests that the court prevent the officers from being questioned on department policies regarding taser use and each Defendants' involvement with past taser deployments. (*See* ECF No. 51.) Defendants contend that such a protective order is necessary because

3

Plaintiff's counsel has attempted to get around various assertions of privilege through her dogged deposition questioning. Plaintiff, in turn, seeks a protective order requiring that Defendants answer these questions and seeks to prevent Defendants' counsel from offering "speaking objections" she contends are impeding the depositions.

## II. STANDARD

In general, the scope of discovery is broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Federal Rule of Civil Procedure 26(b)(1). Materials that would not be admissible at trial may nevertheless be discoverable under Rule 26(b) if they are "reasonably calculated to lead to the discovery of admissible evidence." *Id.* But discovery is not boundless; the Court may limit or regulate the disclosure of materials "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Accordingly, the Court may quash or modify a subpoena under certain circumstances. *See* Fed. R. Civ. P. 45(d)(3).

## III. DISCUSSION

"A party generally lacks standing to seek to quash a subpoena issued to a nonparty," but a party has the right to object to a subpoena if he has a valid claim of privilege regarding the material being sought. *Hendricks v. Total Quality Logistics, LLC*,

275 F.R.D. 251, 253 (S.D. Ohio 2011). "[C]ourts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena." *Barrington v. Mortage IT, Inc.*, No. 07-61304, 2007 WL 4370647, at * 2 (S.D. Fla. Dec. 10, 2007). While the City of Westland has filed an appearance in the present action as an intervenor, the City has not filed or joined a motion formally seeking to suppress the subpoena so the court must proceed based on the Defendants' standing alone.[1]

### A. Employee, Personnel, Internal Affair Files, and Disciplinary History

Plaintiff's subpoena makes a broad request for Defendants' employment and disciplinary records. Defendants argue both that these requests are overly broad and not relevant to the claims presently at issue (ECF No. 36, PageID.377-78; ECF No. 39, PageID.533-35), and that the information's disclosure would violate both Defendants' privacy and the deliberative process privilege. (ECF No. 34; PageID.234-36.) The court agrees that Plaintiff's request is overly broad and will need to be narrowed to be relevant and to not interfere with Defendants' privacy.

### i. Relevance

Plaintiff's motive in seeking Defendants' employment and internal affairs records is clear: he seeks information suggesting that one or more of the Defendants have engaged in similar behavior in the past. Defendants argue that such requests are overly broad because they require the Defendants to turnover significant irrelevant (and private) information for excessive force and failure to intervene claims that are

---

[1] The City of Westland did attempt to file its "Objection to Subpoena from Plaintiff" (ECF No. 33) on the docket, but after the filing was struck as being improper, the City never attempted to file a motion in this case.

adjudicated using an "an objective reasonableness standard." *Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 396–97(1989)). Because the officer's subjective intent is not the focus of such claims, Defendants observe that "[w]hether any officer allegedly received any citizen complaint, or was disciplined, pertaining to any unrelated event is wholly irrelevant to any claim or defense." (ECF No. 39, PageID.533.)

This line of reasoning ignores the fact that Defendants' subjective intent and motive are still relevant to disputed issues here. Plaintiff seeks punitive damages on his federal claims, and to award such damages a factfinder must consider evidence regarding the conduct's reprehensibility, a determination that relies, in part, on the subjective intent of the officer. *See Kidis v. Reid*, 976 F.3d 708, 716 (6th Cir. 2020) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)) ("[I]n assessing reprehensibility, we consider whether: . . . the tortious conduct evinced an 'indifference to or a reckless disregard of the health or safety of others'; 'the conduct involved repeated actions or was an isolated incident'; and the harm resulted from 'intentional malice, trickery, or deceit, or mere accident.' In excessive force settings, . . . the conduct could reflect a reckless disregard of the plaintiff's health or safety."); *Smith v. Wade*, 461 U.S. 30, 56 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

And an officer's past conduct can sometimes be relevant to prove an officer's intent or motive. *See Helfrich v. Lakeside Park Police Dep't,* 497 F. App'x 500, 506 (6th

6

Cir. 2012) ("[Federal Rule of Evidence] 404(b)(1) prevents other-acts evidence from being offered 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.' But that evidence 'may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Fed. R. Evid. Rule 404(b)(2).").

The court finds that recorded incidents of past conduct by Defendant officers are at least potentially relevant to the present dispute and are therefore discoverable. If, for example, one of the Defendants has engaged in an unusual pattern of similar conduct in the past, that fact could have relevance at the punitive damages stage proving malicious intent. But Plaintiff's requests are overbroad for such a purpose. Rather than providing Defendants' entire employee, personal, and internal affairs files, the court finds that the City of Westland need only produce portions of these files relating to any disciplinary actions, official warnings, or findings contained in the department's records regarding each of the Defendant officers to satisfy RFP Nos. 1 - 21.[2] (Production of documents such as employment applications, and yearly performance reviews, for instance are clearly not proportional to Plaintiff's need.) This narrowed scope is consistent with the caselaw cited by Plaintiff himself in support of the requested discovery. *See Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019) (Whalen, M.J.) (holding that without a valid *Monell* claim "to a large extent Plaintiff's discovery request for personnel records must be denied . . . [b]ut Plaintiff is entitled to

---

[2] The court's ruling applies whether such information is usually kept in the officer's personal and employment records, or if it is kept in a separate internal affairs database.

discovery of Defendants' employment records relating to *any* disciplinary actions or findings contained therein") (emphasis added).

### ii. Privilege

While Defendants have raised valid privacy concerns regarding disclosure of their employment and internal affairs files, those concerns do not completely negate the need for the limited portions of the files. Defendants first argue that the disclosure of their personal records would violate their right to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment. (ECF No. 36, PageID.373-74.) In support, Defendants cite *Kallstrom v. City of Columbus,* 136 F.3d 1055 (6th Cir. 1998), where the Sixth Circuit found that police officers have a constitutionally protected privacy interest in certain personal information contained in their employment file. *Kallston* held that the officer's personal safety interest generally outweighs "a request for their addresses, phone numbers, and driver's licenses, and the names, addresses, and phone numbers of their family." *Id.* at 1067.

Here, the court finds that Defendant officers are entitled to an order protecting the types of personal and familial information highlighted in *Kallstrom* along with any medical information contained in the records. *See Sanford*, 355 F. Supp. 3d at 622 ("Pursuant to *Kallstrom*, the Defendants may redact personal information such as addresses, phone numbers, and driver's licenses and the officers' families' names, addresses, and phone numbers, as well as medical information protected under HIPAA."). The disclosure of such information can be readily prevented through redaction of any such information if it is present on the portion of the officer's files that must be turned over. The City shall redact such information from its production and

produce a privilege log explaining such redactions. However, Defendants' privacy interests are not sufficient to completely bar disclosure of the records. "Because Defendants have not shown that the limited disclosure of redacted versions of the personnel files would pose a substantial risk of serious bodily harm, [the officers] cannot prevent the disclosure on due-process grounds." *Wynes v. City of Royal Oak,* No. 2:16-CV-12656, 2017 WL 2222551, at *3 (E.D. Mich. May 22, 2017) (Murphy, J.).

Defendants alternatively suggest that their disciplinary records are protected by executive/deliberative process privilege. This argument largely falters. "The deliberative process privilege is quite limited. Its purpose is to promote 'the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *Wynes*, 2017 WL 2222551, at *3 (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)) (citations omitted). "It therefore protects advisory materials which truly reflect the deliberative or policymaking processes of an agency, but would not protect purely factual, investigative material." *Id.* (citing *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 940 (6th Cir. 1988)) (quotations omitted). "This privilege does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). Communications that are unrelated to a decisional process, or made after the decision, are not privileged. *N.L.R.B.*, 421 U.S. at 151-52. Nor does it extend to "objective facts" upon which an agency's decisions are based. *Aluminum & Chemical Corp. v. United States*, 157 F. Supp. 939, 946 (1958). *Accord Lewis v. City of Detroit*, 234 F.R.D. 157, 160 (E.D. Mich. 2006) (Duggan, J.). "And given its purpose, it follows that the privilege belongs to the

agency seeking to safeguard its internal debates—*not persons or organizations implicated in the discussions*." *Wynes*, 2017 WL 2222551, at *3 (emphasis added).

Given the case law, it is clear that Defendant officers lack standing to assert deliberative process privilege as a reason to quash the subpoena with regards to the City's disciplinary decisions. And, in any event, courts have consistently held that the entirety of a police officer's personnel files and disciplinary history are not covered by deliberative process privilege. *See id.*; *Sanford*, 355 F. Supp. 3d at 624. In sum, when responding to the subpoena presently at issue, the City is free to redact any (likely small) portions of Defendants personnel files that—consistent with this opinion—fall within the limited scope of the deliberative process privilege. But the decision to assert procedural process privilege can be made only by the City, so Defendants do not have standing to quash the third-party subpoena at issue here on such grounds.

### B. Statements regarding the August 17, 2018 incident

Plaintiff's subpoena next requests that the City produce any "written or recorded statements" made by each Defendant officer respectively "pertaining to the August 17, 2018 incident." RFP Nos. 22-26. Defendants do not oppose the discovery of such records, but instead argue that such officer statements were likely already provided as part of the City's response to an October 2019 FOIA request. Based on the briefing provided by the parties, the court cannot verify Defendants' assertion (*see* ECF No. 34, PageID.239), so the parties should confer with each other on this issue in order to reduce discovery costs and ensure that Plaintiff has been provided all relevant documents.

10

### C. Garrity Statements

Plaintiff's Requests for Production Nos. 27 - 31 demand that the City produce Garrity statements from each of the Defendant officers but does not specify any particular incident. Defendants respond that they are unsure if this request is meant to be limited to any statements regarding Plaintiff's August 17, 2018, request or is meant to be broader. (ECF No. 34, PageID.240.) Defendants further assert that they "did not make statements under Garrity that pertains to the subject incident." Plaintiff's response brief does not address this point, so the court presumes that Plaintiff is satisfied with Defendants' response indicating that there are no such *Garrity* statements to produce. (*See* ECF No. 37.) As such, the court finds that the issue is now moot.

### D. Defendants' Motion for Protective Order

Defendants have now also filed a motion for protective order seeking to preclude "Plaintiff from inquiring as to: training, use of force policies and procedures regarding the deployment of tasers; prior taser deployments and taser usage; the investigation that resulted from the August 17, 2018 tasing of Plaintiff, Raymurez Brown and any discipline." (ECF No. 51, PageID.742.) Plaintiff, in response, argues that such information is relevant to the present claims and should not be shielded from discovery by a protective order.

#### i. Taser usage and departmental policy

Defendants' motion for protective order essentially raises a new discovery dispute with regards to the discoverability of the City's taser use policies and officer training records. Defendants argue that discovery of such information is not proportional or relevant to the present dispute because excessive force claims are judged from the

11

perspective of an objective officer, so a defendant's specific training is irrelevant. The court first notes, as explained above, that an officer's subjective intent does have some bearing on a potential punitive damage's determination, so the Defendants' knowledge regarding proper taser usage is not completely irrelevant to the present suit.[3] Furthermore, courts have found testimony regarding standardized policies on taser use can be relevant to an excessive force determination as such information helps demonstrate how a reasonable officer might use a taser in different situations. *See, e.g.*, *Luna v. Bell*, No. 3:11-CV-00093, 2013 WL 12316066, at *3 (M.D. Tenn. Aug. 1, 2013) (finding that "expert testimony on police and corrections practices based on the expert's experience" was relevant to an excessive force claim). The court finds the department's taser use policy likely has at least some relevance to the question of when a reasonable officer would deploy a taser, so the court declines to grant a broad protective order shielding it from discovery.

### ii. Investigation and disciplinary records

The proper scope of discovery regarding both investigative records regarding the August 17, 2018, arrest and the Defendants' disciplinary/personal records has largely been explained in detail in Section III.A above. The court finds that Plaintiffs are entitled to receive all recordings and reports regarding the August 17 incident—with the exception of a small amount of information that may be subject to privilege.[4] As the

---

[3] The relevance of such testimony regarding taser training is likely limited, so Plaintiff is advised that he should keep his discovery requests with regards to this topic proportionally small.

[4] With regards to this issue, the court is troubled by Defendant Scaglione's assertion in recent briefing that the City's final disciplinary decision—including the duration and type of discipline imposed on an officer—is protected by procedural process privilege. (*See* ECF No. 52, PageID.1008 ("Clearly, the discipline is subject to

court has already indicated, the scope of further discovery regarding Plaintiff's employment records is limited. *See also Sanford v. City of Detroit,* 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019) ("Plaintiff is entitled to discovery of Defendants' employment records relating to any disciplinary actions or findings contained therein."). So, the court will enter a protective order limiting the scope of personnel records subject to discovery to the portions of those files containing complaints, disciplinary records, or related findings. To protect Defendants' privacy interests, the court will also require that all personnel records provided by the City be redacted to exclude sensitive personal information. *See Kallstrom*, 136 F.3d 1067 (6th Cir. 1998).

### E. Plaintiff's Motion for Protective Order

Plaintiff has also filed a motion for protective order "to govern attorney conduct during depositions." (*See* ECF No. 48.) Plaintiff argues that during the depositions of Defendant Cale Furney and Defendant Anthony Jovanavich, defense counsel posited numerous baseless objections and regularly engaged in "speaking objections" that prevented the deponent from answering questions. The court has reviewed the transcripts and in large part agrees with Plaintiff's counsel. The court cautions defense counsel that offering such "speaking objections" to lead witnesses or to consume time on argumentation is inappropriate. (ECF Nos. 48-5, 48-6.) Since much of the dispute during the deposition seemed to be focused on what areas of questioning were

---

the Executive and Deliberative Process privileges.").) Because an executed disciplinary decision is by its nature a final determination by the City, that has been communicated to the disciplined officer, it falls well outside the scope of procedural process privilege which cover only "predecisional" internal deliberations. *See N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975) (noting that "communications made after the decision and designed to explain it" are not privileged). Defendants are advised that they cannot assert privilege with regards to such deposition questions going forward.

13

precluded by privilege, the court is hopeful that following the court's explanation of such privilege, counsel will be able to proceed in a more collaborative manner throughout the remainder of discovery. Therefore, the court does not see the need to enter a protective order at this juncture and will deny the motion without prejudice. Both parties are advised, however, that unprofessional conduct by counsel will not be tolerated.

## IV. CONCLUSION

For the reasons explained above,

IT IS ORDERED that Defendants' Motion for a Protective Order (ECF No. 51) is GRANTED IN PART and DENIED IN PART. The subpoenaed parties shall DISCLOSE to Plaintiff files referred to in the "Westland Subpoena," not otherwise quashed, within 21 days of this order, subject to the following limitations:

> (1) Defendant Officers' social security numbers, driver's license numbers, home or other addresses, phone numbers, and email addresses shall be redacted.
>
> (2) The names, ages or birth dates, social security numbers, driver's license numbers, home or other addresses, phone numbers, and email addresses of Defendant Officers' family members shall be redacted.
>
> (3) Defendant Officers' personal and employment records, besides the portions of those records specifically pertaining to past complaints, disciplinary actions, or related findings shall be shielded from further discovery.

IT IS ORDERED that Plaintiff's Motion for Protective Order (ECF No. 48.) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' "Motion to Quash" (ECF No. 34) is GRANTED IN PART, the portion of the City of Westland subpoena is QUASHED as to the request for the entire employment, personal, and internal affairs files for each Defendant Officer. The City need only produce a portion of these records that directly relates to past complaints, disciplinary actions, and related findings. The City must provide a written privilege log for any information it redacts or withholds due to a claim of privilege.

                                              s/Robert H. Cleland              /
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2021, by electronic and/or ordinary mail.

                                              s/Lisa Wagner                   /
                                              Case Manager and Deputy Clerk
                                              (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-10192.BROWN.MotiontoQuash.AAB.2.RHC.docx